**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

AAMIR KHAN, AASIM KHAN,

    *Petitioners,*

v.

VERNON LIGGINS, *et al.,*

    *Respondents.*

Case No. 26-cv-00088-ABA
Case No. 26-cv-00089-ABA

**MEMORANDUM OPINION**

Pending before the Court are consolidated Petitions for Writ of Habeas Corpus, ECF No. 1, for Petitioners Aamir Khan and Aasim Khan, filed on January 9, 2026.[1] On February 6, 2026, Respondents filed a Response and Motion to Dismiss, ECF No. 17, and on February 16, 2026, the Petitioners replied, ECF No. 19. The parties complied with the Court's Order to submit status reports, ECF Nos. 21, 22, & 23, and the Order to Show Cause, ECF Nos. 24 & 26. For the reasons below, the Court will grant the Petition, ECF No. 1, and deny the Motion to Dismiss, ECF No. 17.

## I.    BACKGROUND[2]

Petitioners, Aamir Khan and Aasim Khan, are natives and citizens of Pakistan who have lived in the United States since 1968 and were previously granted permanent residence in the mid-1980s. ECF No. 1 ¶ 1. In 1995, they were convicted of fraud-related

---

[1] Because the two Petitioners are brothers with identical circumstances, this Court granted the Joint Motion to Consolidate the cases of Petitioner Aamir Khan (Case No. 26-cv-00088) and Petitioner Aasim Khan (Case No. 26-cv-00089). ECF Nos. 6 & 7.

[2] As the facts alleged in the two Petitions are identical, the Court will cite only facts filed in the Petition of the lead case—although all facts apply to both Petitioners.

charges, for which they served approximately sixteen months in prison. *Id*.; ECF No. 18-1 at 13. Shortly after they were released from criminal custody, the Government initiated removal proceedings to revoke their permanent resident status. ECF No. 18-3 at 2–6. They were ordered released on bond while their removal proceedings were ongoing. ECF No. 18-5 at 2. Both Petitioners were ordered deported in 1997, and this decision was affirmed by the Board of Immigration Appeals and Fourth Circuit in 2000. ECF No. 18-7; ECF No. 18-9. Petitioners remained released and were issued Orders of Supervision [OSUPs] in 2000 after the Government did "not effect[] [their] deportation or removal [to Pakistan] during the period prescribed by law." ECF No. 18-11 at 2; ECF No. 1 ¶ 1.[3] They allege that they have complied with the terms of their release for the last twenty-six years. ECF No. 1 ¶ 16. In compliance with their OSUPs, on December 9, 2025, Petitioners initiated the application process for Pakistani travel documents at the Pakistani Embassy in Washington, DC. ECF No. 26 at 2; ECF No. 26-1 at 1.

On January 9, 2026, the brothers reported for their regular ICE check-ins, at which point they were both detained. ECF No. 1 ¶ 16. Petitioners filed Petitions for Writs of Habeas Corpus that same day, seeking immediate release from ICE detention. *Id*. ¶ 26. They have remained in Respondents' custody since that date. *Id*. ¶ 16; ECF No. 23 at 1. In February 2026, Respondents filed a response to the petition and motion to dismiss,

---

[3] For decades Pakistan was considered a "Recalcitrant/Uncooperative" country that did not accept Pakistani deportees. ECF No. 1 at 8. As of 2025, however, Pakistan began accepting Pakistani citizens deported from the United States. ECF No. 17-1 at 11; *see also* ECF No. 26-3 ¶ 10 ("Since approximately February 2025 Pakistan has been accepting its own citizens and nationals being removed from the United States and has been cooperating and issuing travel documents for those citizens and nationals, including individuals like the Petitioners, who have criminal convictions.").

ECF No. 17, along with various exhibits, ECF No. 18. One of those exhibits purports to be the Notice of Revocation of Release for Petitioners; however, neither notice is signed by an authorized ICE officer and the proof of service of the notice for Petitioner Aamir Khan does not have a signature or indication of refusal to sign. ECF No. 18-12 at 2–3, 5.

On March 8, 2026, Respondents filed a supplemental response in which they allege that Petitioners "refuse to complete the travel document application and are acting to prevent their removal from the United States." ECF No. 20 at 3–4 (citing ECF No. 20-1, Declaration of Charles Ward, ¶ 17). Respondents did not indicate when Petitioners were served with the requested forms or whether Respondents had served a notice of non-compliance on Petitioners. Respondents further contended that "[t]he immigration records of the Petitioners include identification and birth records including Pakistani birth registry documents, and copies of *expired* Passports issued by the Pakistani Embassy in Washington D.C. in the 1980s." ECF No. 20-1, Declaration of Charles Ward, ¶ 12 (emphasis in original).

On June 2, 2026, this Court ordered the parties to file a joint status report "including but not limited to the Petitioners' current location(s) and status(es), any steps that have been taken to effectuate their removal, and the Petitioners' cooperation or lack thereof with these steps." ECF No. 21. On June 6, 2026, Respondents filed a status report. They repeated the statement that Petitioners were refusing to complete the travel documents application. ECF No. 22 at 3. This time Respondents updated that "[o]n or about May 5, 2026, ICE submitted travel document applications to HQ for review, with the limited information they had in their possession," including the previously mentioned documents in their immigration records, "since both Petitioners refused to cooperate with completing their travel document application." ECF No. 22-1,

Declaration of Charles Ward ¶¶ 12, 17. Respondents further stated that—although as explained below this was not accurate—"[a]s of June 5, 2026, the travel documents remain pending with the Embassy of Pakistan," implying that ICE had already submitted the necessary information to the Embassy of Pakistan and that ICE was waiting on the embassy. *Id.* ¶ 17.

The same day, Petitioners filed their own status report. They disputed Respondents' allegations of non-cooperation, instead stating that "[i]t is not clear what role the Petitioners need to play" because ICE had not "share[d] anything that they need to sign with counsel" or "communicated with [Petitioners'] counsel." ECF No. 23 at 1.

On June 9, 2026, the Court ordered Respondents to show cause why the Petitions should not be granted based on the procedural defects in the Notice of Revocation of Release. The Court, accepting Respondents' representation that ICE had submitted travel document requests to Pakistani authorities, also ordered the parties to clarify when the travel document requests were sent to Pakistani authorities as well as the status and anticipated timing of a decision by Pakistan. ECF No. 24.

On June 24, 2026, Respondents filed a response. They revealed that the previous statement that Petitioners' applications had been sent to the Pakistani Embassy was "inaccurate." ECF No. 26 at 5; ECF No. 26-3, Declaration of Charles Ward, ¶ 19. Instead, Respondents now contend that Petitioners' applications were sent to ICE headquarters on May 5, 2026, and have been approved by headquarters, and that ICE is "currently waiting for the issuance of money orders to cover the processing fee before sending the requests to the Embassy." ECF No. 26-3 ¶ 20. Respondents provide no indication of how long the process for issuance of money orders will take. Respondents also state that on June 23, 2026, Petitioners' counsel was provided with copies of travel document

application forms. ECF No. 26 at 4. Respondents further stated that they "do not believe clerical errors in the Notices of Revocation are sufficient to require the Petitioners' release," but that reissuance "of the Notices would cure any such defect, and could be accomplished in a matter of days, if required." *Id.* at 6. They do not allege to have taken any steps to attempt to cure this defect (to the extent that it is even curable).

Respondents oppose Petitioners' release on the basis that they will be removed to Pakistan in the reasonably foreseeable future, or alternatively, that they should remain detained "because of their own efforts to thwart their removal" under 8 U.S.C. § 1231(a)(1)(C). ECF No. 22 at 3; *see* ECF No. 26 at 2–6. Alternatively, Respondents request that, should the Court order release, the Court should allow Respondents to impose additional conditions on the release such as more frequent check-ins and a requirement to complete the travel document applications. ECF No. 26 at 6.

## II. DISCUSSION

### a. Jurisdiction

As an initial matter, this Court has jurisdiction over the petitions and Respondents do not contend otherwise. Although 8 U.S.C. § 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," the Supreme Court has held that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 488 (4th Cir. 1999) (holding that "[d]istrict court jurisdiction over habeas petitions . . . is not prohibited by § 1252(g) because it is inapplicable to final deportation

orders."). And although the REAL ID Act, which became effective on May 11, 2005, included several amendments to § 1252, *see* Real ID Act, Pub. L. No. 109-13, §§ 101(e), 101(f), 106, 119 Stat. 231, 302-323 (May 11, 2005), it did not materially amend § 1252(g). The language that the *Zadvydas* Court held rendered § 1252(g) inapplicable to post-removal detention challenges—limiting § 1252(g) to a "cause or claim . . . arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders"—was unaffected by the 2005 amendments. Petitioners here do not seek an order staying their removal, and thus this case does not implicate the jurisdictional bar in 8 U.S.C. § 1252(g).

### b. Petitioners' *Zadvydas* Claims

The Court finds that, in the circumstances here for the reasons explained below, Respondents have not established that Petitioners' removal is likely in the reasonably foreseeable future, and thus Petitioners must be released from detention under *Zadvydas*. To help "guide lower court determinations" on whether removal is "reasonably foreseeable" and to "limit the occasions when courts will need to make them," the Supreme Court held that six months of post-removal-order detention is "presumptively reasonable." *Id*. at 700–01. As the undersigned has previously explained, this "holding [is] a 'presumption,'" and does not "suggest that courts only begin to inquire into whether detention is reasonably foreseeable after the expiration of the six-month period." *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (citing *Zadvydas*, 533 U.S. at 701). Though *Zadvydas* was not clear as to whether "the presumption [ ] appl[ied] only during the first six months after an order of removal becomes administratively final," here the Court need not address this point as Petitioners have now been detained for six months. *Id*. at 378.

Petitioners have been detained since January 9, 2026—six months ago. ECF No. 1 ¶ 16. There has only been one country designated for removal for the last six months, Pakistan. ECF No. 26 at 2. Although Respondents have had access to many of the documents requested by the Pakistani Embassy for travel document applications for Petitioners, the applications were only sent to ICE Enforcement Operations HQ on or about May 5, 2026. *Id.* at 3. As of June 24, the application had been approved by ICE but had not been sent to the Pakistani Embassy because "ICE HQ [was] 'currently waiting for the issuance of money orders.'" *Id.* at 5. Respondents did not provide any anticipated timing for issuance of those money orders, were unable to answer when the applications would be sent to the Pakistani Embassy, did not give an estimate as to when the Embassy may decide on the applications, and did not provide any evidence to support any estimate on when Petitioners may, eventually, be removed. *Id.* at 5–6. Given all the evidence and the fact that Petitioners have already been detained for six months without significant steps being taken to effectuate their removal, Respondents have not established that Petitioners will be removed in the reasonably foreseeable future.

Respondents argue that Petitioners have refused to cooperate with removal efforts and that they should therefore be subject to the provision of 8 U.S.C. § 1231(a)(1)(C), which extends detention and the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.*; ECF No. 22 at 3. Respondents rely on various cases where courts have held that a petitioner impeding their removal from the United States extends the detention and removal period for the *Zadvydas* analysis. ECF No. 22 at 3 (citing *Pelich*

*v. I.N.S.*, 329 F.3d 1057, 1058 (9th Cir. 2003); *Partovi v. Matuszewski*, Case No. 09-5334, 2010 WL 3521597, at *1 (D.C. Cir. Sept. 2, 2010); *Diallo v. Pereira*, Case No. AW-07-348, 2007 WL 5230798, at *1–2 (D. Md. June 29, 2007)).

Although § 1231(a)(1)(C) clearly authorizes continued detention where a person has failed or refused to apply for documents that are "necessary to the alien's departure"—and although such failure is relevant to deciding whether such person is entitled to relief under *Zadvydas*—the cases that Respondents cite are inapposite. Each of those cases involved affirmative misrepresentations in bad faith, providing false information or fake names, falsely claiming citizenship in other countries, or otherwise falsifying travel document applications. *See Pelich*, 329 F.3d at 1058 (misrepresentations of names, parents' citizenships, and own citizenship); *Diallo*, 2007 WL 5230798, at *1–2 (misrepresenting name and country of origin); *Olajide v. B.I.C.E.*, 402 F. Supp. 2d 688, 690–93 (E.D. Va. 2005) ("misrepresent[ation] to a consular official that he had a case pending and a stay of removal in place" and telling Embassy officials that "he would not return to Nigeria until a dentist of his choosing perform[ed] the necessary surgery for the injury to his jaw"). Such circumstances differ greatly from the situation here; not only do Respondents not contend that Petitioners provided false or misleading information, but Respondents also have not shown that Petitioners' cooperation is "necessary" for the government to complete the documentation. 8 U.S.C. § 1231(a)(1)(C). The fact that Petitioners went to the Pakistani embassy a month prior to being detained to apply for the necessary travel documents further undermines any suggestion of any bad faith or conspiracy to prevent removal. *See* ECF No. 26-1. And although Petitioners alleged that they had asked ICE officers on two prior occasions to share any forms that they needed to sign with Petitioners' counsel prior to signing,

8

Respondents did not do so until June 23, 2026. ECF No. 23 at 1; ECF No. 26 at 4. *See also* 8 C.F.R. § 292.5(a) ("Whenever a person is required by any of the provisions of this chapter to . . . file or submit an application or other document[,] . . . such [document] shall be given by or to . . . the attorney or representative of record.").

Further, Respondents' evidence does not support their claims that Petitioners should continue being detained due to non-cooperation under 8 U.S.C. § 1231(a)(1)(C). On April 10, 2026, the sole reason given for continuing detention was that they would be removed in the reasonably foreseeable future, without any allegation that Petitioners had engaged in "willful failure or refusal" to cooperate. ECF No. 26-2 at 1, 4. Respondents do not allege that they have served Petitioners with any Notices of Failure to Comply under 8 C.F.R. § 241.4(g)(5), which would be required if the non-cooperation was a true impediment to removal. In fact, Respondents were able to complete the required forms because they had access to all required documents and thus could have filed the necessary travel document applications months ago. *See* 8 C.F.R. § 241.4(g)(2) ("The district director shall continue to undertake appropriate steps to secure travel documents for the alien both before and after the expiration of the removal period."). Thus Respondents have not shown that Petitioners are subject to continued detention under § 1231(a)(1)(C). Although they declined to sign the travel document applications without their attorney's prior review, there is no evidence demonstrating bad faith or conspiracy to prevent removal.

Furthermore, Respondents have acknowledged that the next step to obtaining travel documents has been entirely within their control—for one U.S. government agency to obtain a money order from another U.S. government agency, for the travel document requests. ECF No. 26 at 5. Respondents' delay in obtaining money orders

after their four-month delay in completing the forms and lack of a timeline for when those money orders will be issued is not a basis for ongoing detention. This must also be viewed in the context of the inconsistencies and irregularities within Petitioners' process. Respondents previously claimed over a month ago that the travel document requests were already pending with the Pakistani Embassy, ECF No. 22 at 2, but now state that that was "inaccurate," ECF No. 26 at 5, as the documents have never been sent to the Pakistani Embassy.

The Court therefore finds that Petitioners' removal is not reasonably foreseeable within the meaning of *Zadvydas* and that they are not subject to the provision of 8 U.S.C. § 1231(a)(1)(C). Thus the Court will grant the Petitions and order that Petitioners be immediately released. The Court is mindful of the fact that Respondents intend to continue their efforts to remove Petitioners and will grant the alternative relief that Respondents request, requiring Petitioners to complete and submit Pakistani travel document applications within 60 days of release and permitting Respondents to impose further conditions on their release. ECF No. 26 at 6.

### c. Petitioners' *Accardi* Claim

Though the Court does not base this decision on *Accardi* grounds, there have also been significant failures to comport with the Government's own regulations throughout Petitioners' detention that Respondents appear not even to have attempted to cure, including revoking both Petitioners' release without *any* authorized signature. ECF No. 18-12 at 2–3, 5–6; *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Santamaria Orellana v. Baker*, Case No. 1:25-cv-1788-TDC, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025); *Marroquin Escobar v. Noem*, Case No. 1:26-cv-590-PX, 2026 WL 1109342, at *4 (D. Md. Apr. 24, 2026). Despite acknowledging this error,

Respondents have not come forward with any evidence that they have rectified the issue, and in any event do not provide any authority providing that this pre-deprivation procedure can properly be rectified after such a delay. *See* ECF No. 26 at 6.

### III.   CONCLUSION

For the reasons explained above, the Court will grant the petitions for writs of habeas corpus, deny Respondents' motions to dismiss, and order that Petitioners be released, in an accompanying order.

Date: July 10, 2026

_____*/s/*_____
Adam B. Abelson
United States District Judge